Mr. Chief Justice, and may it please the Court. Over the past 20 years or so, this Court has clarified the law to prevent ordinary procedural rules, like filing deadlines, from being misinterpreted as jurisdictional, contrary to Congressional intent. The Clear Statement Rule governs that analysis. That rule demands a clear statement from Congress, on par with explicit language, to establish a jurisdictional requirement. At issue here is whether 5 U.S.C. § 7703 B1A's filing deadline is jurisdictional. Nothing in the text of B1A suggests that it is. That can end the inquiry. That conclusion is confirmed by the text of the relevant jurisdictional statute, 28 U.S.C. § 1295A. As relevant here, § 1295A9 creates jurisdiction in the Federal Circuit over appeals, quote, pursuant to, close quote, § 7703 B1. Pursuant to is a notoriously ambiguous phrase. Nevertheless, the government claims that the only plausible interpretation of pursuant to is as necessitating that all the requirements of B1A are satisfied. But pursuant to can mean invoking B1, not satisfying its filing deadline. That is how this Court interpreted interlocutory appellate jurisdiction in removal cases in BP PLC in 2021. It held that pursuant to means invoking a particular statutory provision, not satisfying its requirements. Using this compelling interpretation, or a similar one, B1A's filing deadline is not jurisdictional. That interpretation is at least plausible. So, under the clear statement rule, B1A's filing deadline is a mere claims processing rule. I would welcome any questions from the Court. Going back to that provision, why isn't it 7703, why isn't this controlled by Lindle? It's not controlled by Lindle for a few reasons. One, Lindle did not specifically address at all the filing deadline provision. It spoke only in loose jurisdictional terms. And so, in this Court, in Wilkins and Santos-Zacharia, has asked for a much more specific ruling in order for an inference that the clear statement rule is satisfied. In addition, Lindle didn't impose a jurisdictional requirement at all. It actually read the jurisdiction of the Federal Circuit broadly. It interpreted the relevant statute to say that not only the employees and applicants for employment are able to bring claims under 7703 B1A, but so are retirees, even though they're not mentioned explicitly. So, 1985, Lindle doesn't specifically address this provision or a filing deadline whatsoever. And in addition, it is the sort of loose jurisdictional language that the clear statement rule is designed to clean up. Well, we know that one area where jurisdiction is enforced rigorously is from one level of court to another, right, from the district court to the court of appeals. Why does it make sense to have a totally different rule when it's from an agency to the court of appeals? A couple of reasons. First of all, in Bowles, the reason that the Court adopted this approach was a long history of this type of notice of appeal from an Article III court to an Article III court. Now, this Court has repeatedly said that Bowles and that general rule should not be read beyond the Article III to Article III context, including in Hamer and in Fort Bend County. And then, more generally, there's not only a different statute at play here, one of much more recent vintage, but also there's a very different jurisdictional posture. One of the things this Court has said repeatedly in interpreting filing deadlines and other potentially jurisdictional provisions is to look at the nature of the litigation process that it's coming from, and the MSPB process, much like this Court, like the veterans' approach in Henderson or like the adversarial approach for the IRS in Beckler, is a much more lenient approach. It is adversarial, but it is not in the same way that an Article III litigation is, and so context is important here. And given that context and also the precedential reading of the clear statement rule, I would submit that the clear statement rule should apply kind of ab initio here, and then the burden is on the government to show that the only plausible reading... There's no history that you could point to where Congress has always spoken in jurisdictional terms of an agency appealing to an Article III court, correct? That's precisely right. And, in fact, there's some statutes that clearly on their face provide for equitable tolling in that situation. That's right. So that defeats any history. I think that's right. All right. One other argument the government raised was that courts of appeals are ill-suited to handle the factual basis of this kind of finding. Do you agree with that argument? And if you don't, why not? I don't agree with that argument, and if I may say first before that, that argument conflates two separate issues. One is whether this requirement is jurisdictional, and the other is whether it's mandatory. And so it is at least possible, and the only issue before this court today is, is the filing deadline jurisdictional? But this court could, or the lower court would be, in the first instance, the right place to address it, is if the lower court feels that having a filing deadline subject to equitable tolling is not appropriate, it could say that the filing deadline is not jurisdictional, but also is mandatory and not subject to equitable tolling. Having said that, to answer your Honor's question more directly, we don't agree for a series of reasons. I mean, one of them is that appellate courts often engage in similar kinds of limited factual inquiry. Standing is an example. So is Federal Rule of Civil Procedure 23, where an appellate court is asked whether class certification would ring the death knell for litigation. These are kinds of narrowly constrained procedural questions that a court is fully able to handle, and an appellate court is fully able to handle. And so would be the same thing here. The facts are not actually all that disputed. They're relatively narrow here. The real question is a legal judgment, and that is the kind of legal judgment a court of appeals is fully capable of making. We look at facts in mootness, in standing, the statutes that give us directly equitable tolling permission. The one thing about a mandatory claim processing is that it can't be suspante decided by a court below. It has to be raised by the opposing party, correct? I believe that's generally correct. That's right. And was that the case here? It was the case here. Here, in fact, the government below never raised the deadline issue at all. The Federal Circuit raised it suspante, and then when the Federal Circuit issued an order to show cause asking for briefing, my client, Mr. Harrow, addressed the issue in briefing, and the government did not file a brief addressing that issue. So it was entirely from the government, from that perspective, suspante. The Federal Circuit raised it on its own. What is the authority for the proposition that a mandatory claims processing rule cannot be raised suspante by a court? I would say that a couple of issues. I would say, one, it is generally speaking that has been the approach, but that's not an issue here today, and it is also possible. There's at least one case today versus McDonough, which indicates that that kind of mandatory claims processing rule could at least potentially. So we are not resting our case on the proposition that if this filing deadline is not jurisdictional, then the court is necessarily unable to raise it suspante. The indication here, though, is what we would ask is at least that the Federal Circuit be given the opportunity on remand to decide whether it would raise it suspante. What was clear in the reasoning below is the court felt that it had to because the issue was jurisdictional, and so we would like to brief the issue at the least on remand that in this circumstance either the court can't or it just might not. Why would the government be precluded from raising the question if we were to send the case back? My understanding is that before they even had an opportunity to respond, the court suspante issued an order to show cause, right? That is correct. Yes. So I would say two things. One, we would request that that issue be reserved for remand as well. For all we know, the government may or may not raise this issue at all. In May, 11 years into this mostly pro se litigation, the government just might allow Mr. Harrow to proceed on the merits with his appeal. But the basis for forfeiture would be not so much the issuance of the order to show cause, but the fact that after the Federal Circuit issued its order to show cause, the government chose not to submit a brief. And that has not been an issue that's been briefed, the forfeiture issue, but we would suggest that in the first instance the Federal Circuit should address that. Am I wrong that the Federal Circuit has precedent that looks at this very deadline and holds that it's not subject to equitable forfeiture? Yes. You're right. I apologize. You're right. I'm right. I'm sorry. I asked the question in a weird way. No, no, no. Entirely my fault. Yes, so there's precedent that goes back almost exactly, I believe, 40 years in the Federal Circuit that treats this filing deadline as jurisdictional and therefore not subject to forfeiture and not subject to equitable tolling. Having said that, this Court has repeatedly held as early as 2006 in Arbonne, as recently, excuse me, as 2023, I believe, in Santos-Zacharia, that lower court precedent are not enough by themselves to establish, to satisfy. Yes. I'm just, I guess I'm just wondering whether the equitable tolling finding is bound up with their jurisdictional findings such that if we said, you're right, it's not jurisdictional and sent it back, would the Federal Circuit be bound to say, well, it's mandatory anyway, and your client doesn't get any relief? Oh, thank you, Your Honor. So three pieces, I would say. One, I believe it is, those two are bound up. I don't think the Federal Circuit had occasion to decide what would happen with equitable tolling if the filing deadline were non-jurisdictional because the equitable tolling issue is subsumed within the determination that the filing deadline is jurisdictional. I see. Having said that, there is the issue of forfeiture, so our client still might get relief. And then there's also the issue of whether the government on remand might or might not choose to pursue this issue and might allow Mr. Harrow, who has proceeded for 11 years seeking $3,000 of compensation and interest, to just get his day in court in the Federal Circuit on the merits. It is extraordinary the lengths to which this case has gone, seven years waiting and then the e-mail and all that. But I just have a question, background. Both sides agree that we have a clear statement rule with respect to whether a statute is jurisdictional or a mandatory claims processing rule. I'm just curious what you think the justification for that clear statement rule is, what your understanding of it is. Sure. I think there's a couple of justifications, as I understand it. One is that in the first instance, courts have at times used the word jurisdiction loosely with implications that Congress probably never intended. And so it's a rule of fidelity to congressional intent in that sense. I think there is a second justification that has now arisen, which explains in part why lower court decisions are not enough, which is having this court, at least since 2006, having articulated the clear statement rule, Congress should be presumed to legislate with that background in mind. And so it's sort of double fidelity to congressional intent. Yeah, it's a little awkward, though, isn't it? Because, I mean, you could say, well, there have been a lot of drive-by jurisdictional rulings. Don't do that anymore. Stop. And just faithfully interpret statutes. But this Court's gone further and said clear statement rule. Yes, Your Honor. I think either suffices in this instance because I do think the pursuant to language isn't strong enough. The explicit language of 7703B1A isn't strong enough to infer congressional intent and the like. And so Lindahl really was a drive-by jurisdictional statement. I do agree that the articulation has been stronger than that or the rule has been stronger than that, and I think I would hope that that makes this a relatively easy case. So there is a fork in the road, but I would say either path leads. What is your understanding as to why the government has resisted your client's case so strongly? I mean, he spent seven years waiting, five of which were because the government couldn't manage to get a quorum together to resolve it, sent him an email, an old email address, and he acted as quickly as he could when he got it, and yet here we are in the Supreme Court of the United States over a $3,000 claim. Yes. We're hearing it. You know, we've done every other claims processing rule statute on the books. I'm just kind of surprised we're having to do the government's making us do this one. Do you have any insight? Right. I don't have insight. I mean, I would say it's a little bit off point, but my client has great reverence for the law. In some way, this whole process has been a tremendous honor for him. Well, I don't fault your client. No, no, yes. I'm just wondering why the government's making us do this. I don't know. But it is a sort of form of compensation, that to be here today is an honor for me and an honor for him. But having said that. It's an honor for all of us. And I seriously doubt that we have seen every single statute where there is potential jurisdictional versus claims processing rule argument. I'm willing to bet that there are more. Hopefully a clear ruling today in our favor would help to alleviate that issue. I think the government wants the court to do the work for it. Meaning, if the court has to suspend a certain determined jurisdiction, and if the court doesn't, then they have to do a little work and look at the record and see if, in fact, whether they have an exhaustion claim or not. I hesitate to hazard a guess, Your Honor. A couple of thoughts I would add. One, the government didn't raise this below, so it's at least conceivable, again, that on remand they would let it go. No, because the court was doing it for them. Thank you. Absolutely. And I do think along those similar lines, and I, again, hesitate to be presumptuous, but I think in some ways at least some members of the federal circuit would welcome this court's intervention. They seem stuck in a precedent that at least some of them believe is no longer consistent with Supreme Court doctrine. But they are abiding by it unless and until they're told otherwise. Thank you, Counsel. Justice Thomas. Justice Alito. Thank you. Thank you. Your Honor. Ms. Brown. Thank you, Mr. Chief Justice, and may it please the court. In Section 1295A9, Congress granted the federal circuit jurisdiction over appeals from final MSPP decisions pursuant to Section 7703b1, which includes a deadline for filing an appeal. As this court has recognized in cases like BP and SAS Institute, the plain meaning of pursuant to is in accordance with or in compliance with. By conditioning the court's jurisdiction on compliance with 7703b1, the statutory text provides the clear tie between the appeal deadline and the jurisdictional grant, which satisfies this court's clear statement rule. That view of the text is confirmed by precedent and history. In Lindahl, this court squarely addressed whether the federal circuit had jurisdiction over an appeal from the MSPB and held that such jurisdiction is governed by Section 1295A9 and 7703b1 together, with Section 7703b1 setting the jurisdictional perimeters for the federal circuit's review. For the past 40 years, the federal circuit has recognized the same thing and has repeatedly held that the time limit here is jurisdictional. Against the backdrop of that settled precedent, Congress has repeatedly reenacted or amended the statute, including specifically the time limit. Petitioner's contrary arguments fail to offer any plausible alternative reading of the statutory text. His argument that none of Section 7703b1 is jurisdictional is directly contrary to Lindahl and would make Section 1295A9's grant of jurisdiction incomplete. And his alternative argument that the first sentence of 7703b1 is jurisdictional but the second is not creates a distinction that Congress didn't draw. Adopting petitioner's view would require the court to read pursuant to to mean different things for the different sentences of Section 7703b1. And demanding Congress to speak with more specificity would turn the clear statement rule into the kind of magic words requirement that this court has repeatedly rejected. Finally, even if the court were to hold that the filing deadline is not jurisdictional, at a minimum it's not subject to equitable tolling. Federal Rule of Appellate Procedure 26b prohibits extending the deadlines for filing appeals from agency decisions unless authorized by law. Because Congress did not authorize any such extension under either the statute or the federal rules, petitioner's untimely appeal cannot go forward. I welcome the court's questions. Do you think it's at least plausible that pursuant to modifies final order? I don't. And I think the reason for that is that if you were to read the statute that way, it would say that the order or decision needed to be pursuant to or in accordance with and compliance with Section 7703b1. But Section 7703b1 doesn't impose any requirements or limitations on the order or decision. I think that's particularly clear if you look at b1a and b1b together. And those two provisions talk, they sort the cases between either the federal circuit exclusively or the federal circuit and the regional courts of appeals. And the basis for that sorting is not the scope of the order or decision. It's based on what challenges to the order or decision are brought within the appeal. And so I don't think it's actually possible to read the statute that way. Do you lose if pursuant to just means under? I don't think so. As we said in our brief, if under were used in this context specifically, it would have the exact same meaning that pursuant to has here. And that's the same meaning that the court gave to under in cases like Pereira. I think that the easiest way to understand that is to think about how this scheme would work or how this statute would work. I guess I meant under as in go bring an appeal under that section. Go file an order under that section. So do you, under is kind of like an invoking, what it means to invoke. Okay, so the reason I don't think that that. I mean it just doesn't have anything to do with whether you've satisfied every jot and tittle of whatever requirements might apply to that section. The reason that I think that that interpretation is unavailable here is because of what the first sentence of section 7703B1 does require. And I think that it has to be the case that that part is jurisdictional and is required by the reading here. Because if you imagine, for example, that the petitioner here had brought discrimination claims. And so the case is a mixed case. And he brought that case in the court of appeals, in the federal circuit in the first instance. And asserted that he was invoking 7703B1. I don't think that anyone here is suggesting that that case would then be able to proceed in the federal circuit. Because the petitioner had asserted or invoked or relied on 7703B1. It belongs in the district court under B2. And so I think because that interpretation of the statute and interpretation of pursuant to is mandated for that sentence. The same thing has to be true for the second sentence and for the time limit. Ms. Brown, I want to give you a chance to respond to Justice Gorsuch and Justice Sotomayor's points about why is the government here? Why, as a practical matter, I mean this is apart from the merits of your reading of the statute, right? But as a practical matter, why does the government care so much whether this is jurisdictional or claims processing? So I think that the reason that we are here, we take very seriously this court's rulings in this area. And its efforts to bring discipline to the use of jurisdiction. And we're not trying to fight against the application of the clear statement rule. We do think that this case is quite different from many of the cases that the court has looked at before. In almost every other case, the suit fell within a clear jurisdictional grant. And the question was just whether there was another provision and another requirement that displaced that jurisdictional grant. With respect to certain cases or in certain instances. So I think it's really only this case and Beckler that have dealt with the interpretation of a provision that clearly has something to do with jurisdiction. And then the question there is just what is the scope of that jurisdictional grant? And so I think we are still kind of working through and fleshing out and figuring out how this court's clear statement rules do apply to that particular circumstance. And I think in this case that we think we have a very strong argument as to why reading this jurisdictional provision should lead to the result that the clear statement rule. That even with the clear statement rule, the time limit here is jurisdictional. Because we do have that clear tie with the pursuant to language that was lacking in Beckler itself. Do you have, does the government have a position on the question Justice Alito asked you about whether a court can raise the mandatory claims processing rule sua sponte? Yes, we do think that that is permissible under the court's decision in Day v. McDonough. And we think it's very clear that that's what the Court of Appeals, the Federal Circuit, was doing here. Both in its order to show cause and in its order dismissing the case for lack of jurisdiction, the court relied on Rule 26. We also think that a remand here would be somewhat unnecessary in part because the Federal Circuit does have binding precedent holding that the equitable tolling does not apply specifically to rules, to Section 7703b1. And that case, which is OHA v. Department of Army, specifically says even if we were wrong and Section 7703b1 is not jurisdictional, we still think that equitable tolling does not apply. And so I don't think it's the case that it's bound up in its decision, its determination about the jurisdictionality of the provision. At the very least, so the government could waive, right? Yes, the government could choose to waive it. Yeah, so a remand wouldn't be wholly pointless. I suppose that's correct. I mean, I do think that we have already raised I mean, and gosh, I mean, waiting seven years to rule on this fellow's claim and then sending him an e-mail and to an old e-mail address and he acted as fast as he could. I mean, it's not wholly inconceivable the government might in its magnanimity choose to waive this defect. Sure. So, I mean, I do want to address the delay here, which I don't think is really attributable to the executive branch because the board members' terms expired and there were lags in time with the nomination and confirmation of the new board members. It was two years on the executive and five on Congress, if you want to be specific, right? Sure, yes. Okay. Yes, and then the board acted as quickly as possible after that and there was an obligation It wasn't Mr. Harrow's fault by any stretch. He did have an obligation to keep his e-mail address updated, but certainly the delay, I'm not trying to suggest that the delay here was his fault. All right. And I ask you the same question I asked your friend on the other side about what do you understand the justification for this clear statement rule to be? So, the way that this court has always framed it is that it's intended to get at what Congress, what we think Congress is actually doing in these cases. And we think that normally Congress doesn't make a lot of separate requirements jurisdictional. And so when Congress does want to do so, we've asked for Congress or the court has suggested that Congress will speak clearly. Do you think this is a sound clear statement rule? Does the government believe it's a sound clear statement rule? That the clear statement rule itself in general is a sound principle? I think, yes, we haven't disputed that the clear statement rule should apply here or is an appropriate use of this court's authority. I do think that expanding the clear statement rule in the way that I think you might have to in order to rule for the petitioner here would be a problem. And I think there are kind of two reasons for that. I think that in order to rule for the petitioner here, you would have to say either that there is something like a magic words requirement in the context of a jurisdictional grant in order to give a time limit jurisdictional consequences. And also that or in the alternative, I guess, that the court would be saying that there are some kinds of extra textual considerations like the kinds of things that the judiciary thinks should or should not be jurisdictional that can be privileged over the clear meaning of the text. I think that if either of those principles are adopted, then that really extends the clear statement rule beyond what the justification. Well, if you were to lose here, what would provide the most clarity, do you think, for the government and for the courts of appeals and district courts, affected courts on these kinds of matters? Maybe it is a magic words requirement would be better because it seems silly to keep having this debate. I suppose that for purposes of clarity, a magic words requirement would be clear. But I don't think that it would be appropriate because at that point, then you are mandating that Congress speak in a particular way, particularly in this context. Maybe magic words is loading the dice, maybe just speaks directly to jurisdiction. Sure, but I guess we think that this provision would comply with that because this is a jurisdictional grant. We know that this is a jurisdictional grant. And no one is disputing that. And in that context, generally, when this court is interpreting a jurisdictional grant, it hews very closely to the text in an effort to avoid either expanding or contracting the court's jurisdiction because of the separation of powers concerns that come with that as an Article III court. And so I think at least in the context of interpreting what is a clear jurisdictional grant, a magic words requirement could raise some concerns there in putting too much of a burden on Congress. Can I ask you about the clear jurisdictional grant here and the implications of your view? Yes. So I'm looking at 1295A9, and it not only cross-references 7703B1, which is at issue here, but also 7703D. So is it the government's position that all of the parts and expectations that come out of 7703D are also jurisdictional? So it is our position that, of course, because the same language attaches 7703D to 1295A into the jurisdictional grant, that the requirements for bringing an appeal that are encompassed within D are also jurisdictional. And that is how OPM has treated them. That's how the board has treated them as well. And I recognize that there's some kind of raised eyebrows from some at the idea that the Director's determination that this particular issue is one that should be appealed would be jurisdictional. But I actually don't think that that requirement being jurisdictional is that far afield from some of the other kinds of gatekeeping requirements for appeals that this Court has already held to be jurisdictional. But what about the procedural oddity of the Federal Circuit having an affirmative obligation to sua sponte make this determination in these kinds of cases if it was a jurisdictional provision? So I think that that's also not particularly odd or particularly difficult for the Federal Circuit to do. It's going to be apparent on the face of the petition itself. The Federal Circuit has discretionary jurisdiction over OPM petitions for review. And so OPM files something that basically looks like a cert petition and includes within that a statement of jurisdiction that will say the Director has made the determination that this is a case that qualifies. And then I think because that's a discretionary determination on the part of the Director, the Federal Circuit is just looking for whether that determination was made and isn't actually analyzing this section. Well, I guess also kind of stepping back a bit, buried in your argument is the notion that both sentences in 7703 have to be jurisdictional. Sorry, in 1295. No. In 7703. And I'm just wondering how you square that with the sort of holding and reasoning in Santos-Sicario where the court suggested that you didn't have to read a provision like that in totality. So I think that the reason this is different from Santos-Sicario is because we have the pursuant to that connects the jurisdictional grant to 7703b1 as a whole. I think we would have a much harder argument and maybe an impossible argument if we were just looking at 7703b1 out of the context of that grant. But why is that different? Santos-Sicario had in accordance with this section, and the government made the argument that is very similar to this one. So I think that the difference there is that that provision in Santos-Sicario, which says notwithstanding any other provision of law, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review. That provision is not the jurisdictional grant, and so it's not conditioning the court's jurisdiction on appeals filed or orders filed in accordance with this section. There's another section of 1252 that granted jurisdiction. So I think we would have a much harder argument, and again, maybe an impossible one, if the court had rejected our reading of a provision that said something like the court of appeals shall have jurisdiction to review removal orders in accordance with this section. But that's not how the court read that provision, and that's not how the provision is written. Well, that seems exactly backwards to me, but anyway. I think it is the difference between conditioning jurisdiction and granting jurisdiction with a condition that it has to be in compliance with this section, and saying, as in Santos-Sicario, that this is the only way you get jurisdiction, there are no grants of jurisdiction outside of this section, but that that provision doesn't say which provisions or which parts of section 1252 are themselves jurisdictional. The only thing in all of these cases, in this rich line of precedent that we have about the clear statement rule, the only legitimate question is what is the meaning of the particular statutory provision that's involved? And what is the meaning of the provision that's involved with respect to certain other questions that are subsumed under the jurisdictional, non-jurisdictional inquiry, such as can the court, must the court raise it itself, can the argument be forfeited? Our cases have gone off on really niggling interpretations of statutory language that doesn't speak at all directly, and only in a very loose way indirectly to this question. But part of your argument gets at perhaps something we could read into this, which would be more productive, which is to ask what is it likely that Congress intended with respect to a particular type of review. And you're talking about review from an administrative agency to a court of appeals. And that seems like it might be a more, an inquiry that gets to what Congress likely thought had it given any thought to this question. So could you elaborate on that? Sure. So I do think that that argument is persuasive and very helpful to us here if you look at the category of appeals to Article III courts. And I think within that category, of course, we have appeals from district courts, which the court has already addressed in Bowles, and then we have appeals from agency decisions. And those have, in a variety of contexts, also been treated, the timelines there have also been treated as jurisdictional. And I do think that it makes sense to look at the court that's actually, whose jurisdiction is at issue, and focus more on that inquiry than where the actual decision is coming from. So what are the features of the question as it arises in that context that would make it more likely that Congress would say, this is a hard and fast rule and it has to be raised even by the court? What are the features of it? It's the fact that it would put a fact-finding obligation on the appellate court? I do think that that is part of it. Usually we don't think of appellate courts as the courts that are going to be engaging in fact-finding in the first instance. Of course, I recognize, as Justice Sotomayor was pointing out, that there are instances in which that happens. But I think the general rule is that we don't normally see that. I would also think that the fact that some amount of process has already been undertaken and that the claims have started to be reviewed and there has been a certain amount of that process that has already gone into effect would indicate that Congress perhaps wants or would be less concerned with imposing harsh consequences because you're already within the review scheme. Whereas it might then also choose to privilege the idea or the fact that it wants to ensure efficient administration and resolution of the claims that have been brought and to privilege the finality requirements or the finality interests that arise in that context as well. I also think that this court, on its own, has recognized that the same considerations apply to appeals from district courts and to appeals from agency decisions in its adoption of Rule 26. And I know that that is a separate argument that we've made here as well. But even setting the separate argument aside, I think Rule 26 in stating that the presumption is going to be that those deadlines for appeals either from Article III district courts or from agency decisions are not subject to equitable tolling or are not able to be extended unless Congress specifically states that they are indicates that this court recognized in adopting that rule that the same kinds of considerations apply and would warrant that kind of rule in both instances. If I could speak directly to the history of this particular provision, I think that that provides even a further basis to think that what Congress was doing here was requiring that this rule is jurisdictional. Prior to the creation of the Federal Circuit, review of MSPB decisions came through the Court of Claims where the time limit for filing is jurisdictional, as this court recognized in John R. Sand. Or it came through regional courts of appeals through the Hobbs Act where the time limits are jurisdictional under every circuit's precedent. So I think that it makes perfect sense that Congress would maintain the jurisdictionality of the time limit when it was just shifting review of those matters over to the Federal Circuit. And the Federal Circuit, of course, then held that the deadline was jurisdictional very soon after it was created. Lindahl, I think, likewise recognized the jurisdictional status of Section 7703b1. And then with that backdrop, Congress has reenacted and amended 7703b1 numerous times, and including with specific reference to the deadline. It changed the deadline from 30 days to 60 days. It changed when the time begins to run. So I think Congress really has been quite attentive to the way that the deadlines operate in this area and has never indicated that it disagrees with the jurisdictional status that it's had. I think this Court has recognized that in Helsin a few terms ago, that when this Court adopts an interpretation of a statute, at least implicitly, and that the Federal Circuit has exclusive jurisdiction over that statute and then makes explicit what was implicit in the Court's decision, that Congress is then presumed to operate with that in the background and to know that and to, I guess, ratify that when it reenacts and readopts the same statutory language. And at what point along that history did we adopt a clear statement rule with respect to jurisdictional determinations? So that was in Arbaugh, which I think is a 2006 decision, I want to say. And the statute has been amended before that, but even prior to that it was also amended. I think there was amendments in 1998, I want to say, but again in 2012. And even with all of that in place, and I think with Lindahl in place, importantly, I don't think that there's a reason to question that what the Federal Circuit assumed or what Congress assumed was happening here was that the timeline maintains its jurisdictional status. If I could talk about Rule 26 just for a moment as well. We do think that the Rule 26 question is presented, is here before the Court, and we think that the Court should actually go ahead and decide that question for, I would say, I guess, three reasons. The first reason is that we think it's a particularly easy question. The plain text of the rule says that Rule 26b applies and doesn't permit the extension of deadlines for appeals from agency decisions. I know that the Petitioners have argued that it applies only to time limits that are contained in the rules themselves, but that language is not in the particular sentence that prohibits this. I'm sorry. Why do you think this is encompassed in the question presented in this case? So we think that this Court has long held that the Respondent can bring up any alternative basis for affirmance that's apparent in the record here, and so that's what we're relying on. I recognize that the Petitioner here hasn't framed the question to include equitable tolling, but we do think it's an appropriate exercise of this Court's discretion to address that because it's apparent from the record, and this Court has done so in cases like, or has recognized that principle in cases like Union Pacific Railroad and others. So I guess with respect to the ---- Would we have to address the forfeiture argument that Petitioner raises in order to show cause? I think you would have to raise forfeiture. I'm happy to address that. I don't think that we did forfeit this argument. The order to show cause before the District Court came, or before the Federal Circuit came right after the administrative record was filed, but before any briefing had occurred, the briefing was then stayed. I think that that order can itself reasonably be viewed as mainly directed toward the Petitioner because it said that the order to show cause was to show cause why this case should not be dismissed, and it cited Rule 26, and it cited the Federal Circuit. The Government didn't really have an interest in explaining the same things that the Federal Circuit had already recognized there. We did raise Rule 26 in our briefing opposition, and we noted that the Petitioner had never said anything about waiver or forfeiture in the Petitioner's cert reply. He also didn't say anything about waiver or forfeiture at that point and instead stated that the Court could address Rule 26 on the merits if it wanted to do so. But the Federal Circuit's order dismissing the case didn't discuss it, did it? It did include a citation to Rule 26. I agree that there wasn't any kind of extended discussion of that. But again, I would say that the Federal Circuit precedent already does make very clear that there is binding precedent on this issue and that Rule 26 applies to 7703b1 and would prohibit extending the deadline there. And again, that's the OHA case that we've cited in our brief. I wasn't quite sure what argument about Rule 26 your brief was making. I mean, so distinguish between two arguments. One is that Rule 26 independently requires what you think it requires. But another, which is what I took to be the argument in your brief, is that Rule 26 should inform our interpretation of 7703b1. And I thought that that was the argument you were making in your brief, not the straight argument about Rule 26. Yes. I'm sorry if I was – if I confused the issue there. It is the latter argument. We do think that Rule 26 informs the reading of 7703b1. It shifts the presumption of equitable tolling and says that it does not – it does not apply in the context of appeals from agency decisions. And that was a rule that was in place at the time. So if that's the argument you're making in your brief, and suppose – just suppose that the Court rejects that argument and says 7703b1 is not jurisdictional, as I read your brief, you don't have a separate Rule 26 argument. Is that right? No, I don't think that's the case. I think that even if there is no jurisdictional status for this rule, the – Well, I know you're making that argument here, but you didn't make it in your brief and read against the backdrop of a question presented that doesn't have anything to do with Rule 26. And then in your brief, you only brought up Rule 26 as something that would inform our understanding of the statute. What I'm suggesting is that you don't really have a Rule 26 argument here. Okay. I'm sorry. I misunderstood the question. I think our argument in our brief and today is that Rule 26 informs the reading of the statute if it's not jurisdictional on its own. So even if the statute is not jurisdictional under this Court's holding and it reads 1295a9 and 7703b1 and says that there is not a jurisdictional rule here, that then leaves open the question whether equitable tolling can apply or whether there can be extensions. And at that point, when there is no language in the statute that speaks to that, then you either have the Irwin presumption on the one hand that would say, yes, we assume equitable tolling applies, or you have Rule 26, which displaces that presumption and says, no, if Congress hasn't expressly stated otherwise, then equitable tolling does not apply. And that's where we think Rule 26 comes into play here. Do you think that question is simple enough for us to resolve here in addition to the main question? We do. We do think that the text of Rule 26 is fairly clear here and says that it applies as a background rule and a background principle in the interpretation of statutes. As I was saying earlier, I think the petitioner has argued that it only applies to deadlines that appear in the rules themselves, but that's incorrect. The language of the rule doesn't say that in the provision that actually talks about the prohibition on extending deadlines. That's even clearer if you look at the earlier versions of the rule that were in effect when Section 7703b1 was enacted. We've included those in our appendix on pages 10a and 11a. And there it says, nor may the Court enlarge the time prescribed by law for appeals or for petitions of review of agency decisions. So we think that's very clear in stating that the rule applies even to statutory deadlines as well. And when the language was shifted to its current form in 1998, the submission that the Chief Justice gave to Congress said that this was just a stylistic change. It wasn't meant to alter the substance of the rule. And so we do think that that's an easy question. I guess to go back again to the second reason that we think that the Court should address Rule 26 here, again, I'll refer to the binding precedent of the Federal Circuit. I think if this is remanded, it's very clear what the Federal Circuit would do based on that precedent. And then the third reason just kind of goes to the consequences of the determination that the time limit is not jurisdictional, which is an issue that the parties have joined issue on and have discussed. And so we do think it would be appropriate for the Court to make that determination now, and it would be efficient to do so. Ms. Brown, if petitioner's reading is plausible, do you lose? So, when this Court has explained the clear statement rule, I don't think right up until this point or as of yet the Court has said that if there is one other plausible definition or interpretation, then it's not clear. The Court in Beckler said that if there are multiple plausible interpretations and only one of them is jurisdictional, it's going to be very hard for the government to prove that the statement is clear. But thus far, I think the most common formulation of the clear statement rule is just that if Congress wants to make a certain provision jurisdictional, it has to clearly state that it is. And so I don't think the Court has gone that far yet, but it could do so, I'm sure. Going back to the Rule 26 issue, Mr. Davis suggests, I guess in conjunction with Justice Gorsuch's questions, that this could be a situation in which the government might look the other way regarding its pressing of equitable tolling or objecting to it on remand. Do you have a comment? I haven't spoken with the agency about what it intends to press on remand if the Court does bring it to that point. I do think that the agency and the government in general has a fairly strong interest in ensuring that Rule 26 is accurately applied and that this doesn't open the door to the potential for equitable tolling and all sorts of other cases. But if it isn't jurisdictional, we could go back and it could possibly go forward, correct? Yes, although I think that the Federal Circuit would still have the option of bringing it up sua sponte on its own as well, which it kind of already has done within the order to show cause and the order dismissing the case. But as I was saying, I do think we have an interest in the correct application of Rule 26. I recognize that Mr. Harrow here has some sympathetic circumstances on his side, and so I think that would be a conversation, but I can't represent to you today that we would try to waive the issue. Thank you, counsel. It's not mandatory. Meaning you can waive it if you chose. I think we think it is mandatory, just not jurisdictional. Well, but mandatory is still a waivable defense. Correct, yes. All right. Thank you, counsel. Rebuttal, Mr. Davis? No, Mr. Brown? No, Mr. Davis. Sorry, excuse me. You're the Chief Justice. It's Mr. Brown now. Okay, change your mind. So just a small number of points on rebuttal. The first one is the analogy, excuse me, to Section 7703b2, where the government argues the first sentence must be jurisdictional. The difficulty for the government by invoking that particular provision is that in Klockner, this Court held that even if the first sentence there is jurisdictional, the filing deadline in the second sentence is not. And so if one is going to rely on that very close parallel textual interpretation, that would actually place the government in the position where it is possible that one of those sentences could have some jurisdictional implications, with the other one not. What this Court said in the second sentence, which is again very closely parallel, 7703b2 and b1, is that the filing deadline is just a filing deadline. So I don't think that analogy helps the government. Second, the government took the position that if there were a mixed case, and so it would necessarily fit appropriately under 7703b1, no one would contest, I'm sorry, under b2, no one would contest that there would be a lack of jurisdiction if the petitioner invoked 7703b1. That's not the only possible interpretation, but in fact the government's position is directly opposite to the holding of this case in BP-PLC, as I understand it, where the pursuant to language was used, and this Court said that pursuant to can be consistent, and it was there consistent with invoking. And the answer to the question of, well, how then can you go forward with a mixed case under b1 is, well, if it's frivolous, then there are other ways to police that, including sanctions and attorney's fees and costs. And nobody here is arguing that Mr. Harrow isn't appropriately proceeding under b1. So I think the kind of reductio ad absurdum that the government invoked is contrary to at least one Supreme Court precedent. One final point. Oh, I'm sorry, two final points quickly. In terms of the timing of the amending of b1a, the most recent amendment was 2012, and in 2012 the clear statement rule was already established, including the statement in Arbo in 2006 that lower court precedents by themselves are not enough to satisfy the clear statement rule. So if we are inferring Congress's intent from the amendments to b1a, the natural inference would be that Congress was listening to this Court and not to the Federal Circuit precedents that this Court said it should not listen to. And then the last point I would say is the question presented is in fact limited to the jurisdictional nature or not of the filing deadline. I do think that between forfeiture and the complexities of equitable tolling, government discretion on remand not to raise this issue, and the complexities under 26b, which include not only that the rule cites to the rules and not statutes, we did not make the complete set of arguments about Federal Rule of Procedure 26b. We would like the opportunity if this Court decides the deadline is not jurisdictional to do so on remand. We think if that issue were to get back up to this Court, the Court would be in a much better position to rule effectively with that sort of background. Thank you. Thank you, counsel. The case is submitted.